# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHRISTOPHER S. SHANK (#451620)**                    **CIVIL ACTION**

**VERSUS**

**JAMES LeBLANC, ET AL.**                                        **NO. 12-0695-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 11, 2014.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER S. SHANK (#451620)           CIVIL ACTION

VERSUS

JAMES LeBLANC, ET AL.           NO. 12-0695-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment (R. Docs. 22 and 91).

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Warden N. Burl Cain, Dpty Warden Darrel Vannoy, Dpty Warden Richard Peabody, Ass't Warden Leslie Dupont, Ass't Warden Cathy Fontenot, Ass't Warden Joseph Lamartiniere, Ass't Warden Troy Poret, Major Antonio "Bo" Whitaker, Capt. Matthew "Cody" Butler, Major Perry Dixon and five (5) unidentified "John Doe" correctional officers at LSP, complaining that the defendants have violated his constitutional rights by instituting an alleged wrongful policy which allows offenders housed at LSP to acquire and use dangerous tools and implements in making hobbycraft products at the prison. The plaintiff further complains that the security provided in the hobbyshops is inadequate because the prison "does not station any correctional officers in or outside its hobbyshops to patrol and ensure the safety of the offenders participating in this privilege." As a result, the plaintiff sustained injury on December 2, 2011, when he was stabbed repeatedly by a co-inmate wielding an "Exacto Knife" in the hobbyshop yard. The

plaintiff asserts that the defendants had knowledge that the referenced policy created an unreasonable risk of danger to inmates confined at the facility and had the authority and duty to remedy the dangerous condition but failed to do so. Finally, the plaintiff complains that he was charged with a wrongful disciplinary violation after the incident for allegedly having been involved in an "Aggravated Fight" and that, at a subsequent disciplinary board hearing chaired by defendant Perry Dixon, the plaintiff was found guilty of this offense and sentenced to the working cellblocks without appropriate due process protections.

The plaintiff moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a copy of LSP Posted Policy # 028 (re: "personal Property - Offender Population"), a copy of LSP Directive No. 09.036 (re: "Security and Control - Hobbyshop Operations"), a copy of two lists and supporting documentation provided by the defendants during discovery which purport to reflect instances occurring in 2008 and 2009 when inmates at LSP were charged with violations of Rules 10 and 11 of the prison rulebook ("Fighting" and "Aggravated Fighting"), a copy of an Unusual Occurrence Report prepared by defendant Cody Butler dated December 3, 2011, a copy of an Accident/Injury Report dated December 3, 2011, a copy of a Healthcare Request Form dated December 3, 2011, a copy of a Hobbyshop Agreement signed by Plaintiff on March 25, 2009, a copy of the plaintiff's Conduct Report, a copy of the plaintiff's Inmate Location Sheet, a copy of the Rules and Procedures for Adult Inmates (2013 ed.), a copy of a written "statement dated December 3, 2011, from Sgt. Willie Ray to defendant Troy Poret, copies of two (2) memoranda dated December 4, 2011, from defendant Cody Butler to the LSP Disciplinary Board (re: an "investigation" into the events of December 2, 2011), copies of disciplinary reports dated December 3, 2011, charging co-inmates Farrell Scarborough

and Lester Lewis with "General Prohibited Behavior," copies of disciplinary reports dated December 3, 2011, charging plaintiff and co-inmate Robert Jackson with "Aggravated Fighting," a copy of an administrative grievance prepared by plaintiff and dated December 30, 2011, a copy of an ARP Statement prepared by defendant Cody Butler dated February 11, 2011, copies of timesheets from the LSP Falcon Unit Hobbyshop for December 2, 2011, copies of excerpts from prison logbooks for the dates December 2-3 and 26-27, 2011, a hand-written summary by the plaintiff of information purportedly obtained from the Falcon Unit logbook for the month of December, 2011, and a Declaration written by the plaintiff and provided "under penalty of perjury."

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent Administrative Remedy ("ARP") Proceedings, certified copies of ARP Statements prepared by defendant Antonio "Bo" Whitaker (dated February 26, 2012), defendant Matthew "Cody" Butler (dated February 11, 2012), and Sgt. Willie Ray (dated February 2, 2012), a certified copy of the LSP Daily Post Roster for the A and C Teams at Camp D on December 2, 2011, a certified copy of the Falcon Unit Hobbyshop Time Clock Card for the date December 2, 2011, an Unusual Occurrence Report dated December 3, 2011 (prepared by defendant Cody Butler), a certified copy of a First Step ARP Response Form dated March 7, 2012 (prepared by defendant Troy Poret), certified copies of the Enemy Lists of the plaintiff and co-inmate Robert Jackson, a certified copy of excerpts from the LSP Falcon logbook for the A and C Teams on December 2-3, 2011, a certified copy of LSP Directive No. 09.036 (re: "Hobbyshop Operations"), a certified copy of a Hobbyshop Agreement signed by the plaintiff on March 25, 2009, certified copies of proceedings relative to the

plaintiff's Disciplinary Report dated December 3, 2011 (prepared by defendant Butler and charging the plaintiff with participation in an "Aggravated Fight"), and the affidavits of Kristen Strahan and defendants Antonio "Bo" Whitaker, Matthew "Cody" Butler, Darryl Vannoy, Leslie Dupont, Richard Peabody, Troy Poret, Joseph Lamartiniere, James Dauzat, and Cathy Fontenot.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the

evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that in 2009 (and apparently prior thereto), defendants LeBlanc and Cain implemented written policies which allowed inmates at LSP to engage in hobbyshop activities and, in connection therewith, to order and possess within the hobbyshop dangerous tools and implements such as Exacto knives, hammers and other bladed tools to use in making hobbyshop items for sale. The plaintiff complains, however, that "L.S.P. does not station any correctional officers in or outside its hobbyshops to patrol and ensure the safety of the offenders participating in this privilege." According to the plaintiff, this conduct "unjustifiably exposes L.S.P. prisoner to a constant and unreasonable substantial risk of serious harm." (R. Doc. 1 at p. 8). As a result, on the evening of December 2, 2011, the plaintiff was attacked without warning by a co-inmate wielding an Exacto knife and suffered serious injuries. The plaintiff did not report the incident, however, allegedly because of threats by co-inmates that he would be labeled a "snitch" or "rat" and would suffer further reprisal if he did so. Accordingly, the plaintiff cleaned his wounds in the hobbyshop bathroom, changed into a clean cover-all provided by a co-inmate, and cooperated with the disposal of his bloody clothes, allegedly because he was "forced" to do so as a result of the threats from other inmates. Notwithstanding, prison officials learned of the incident the next day from a confidential informant and approached the plaintiff and the offending co-inmate, thereafter charging the plaintiff and the offending co-inmate with "Aggravated Fighting" and charging two other

inmates with indirect participation in the incident. According to the plaintiff, prison officials were aware that there had been "numerous incidents through-out L.S.P. facilities which involved offenders using administrative approved hobbyshop tools and materials as weapons in assaults on other offenders." (R. Doc. 1 at p. 10). Despite this awareness, these officials have failed to take the necessary steps to alleviate the known dangerous conditions. The plaintiff asserts, therefore, that these defendants have been deliberately indifferent to a substantial risk of serious danger to his safety and well-being and are responsible in damages for his resulting injuries.

In addition to the foregoing, the plaintiff also complains that his constitutional right to due process was violated when he was denied a fair and impartial disciplinary hearing in connection with the charge of Aggravated Fighting. In this regard, he asserts that proper procedures were not followed because he was not provided with advance notice and an opportunity to prepare a defense prior to his disciplinary hearing. He further asserts that the finding of guilt was unjustified because, although he has acknowledged being "involved" in the aggravated fight of December 2, 2011, he was not the aggressor, and his involvement was limited to being the victim of the attack by the co-inmate. Accordingly, he contests the finding of guilt in connection with the disciplinary charge and the resulting sentence of a transfer to a maximum security working cellblock at LSP. The plaintiff also appears to assert a claim that the effect of the disciplinary proceedings was to label him a "snitch" within the prison community, thereby subjecting him to the possibility of further harm at the hands of other inmates.

In response to the plaintiff's allegations, the defendants first seek dismissal of the plaintiff's claims asserted against them in their official capacities for monetary damages. However, although the defendants are correct that § 1983 does not provide a federal forum for a litigant seeking monetary recovery against a state official acting in an official capacity,

specifically because the official in that capacity is seen to be acting on behalf of the State and is not seen to be a "person" within the meaning of § 1983, *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the plaintiff in this case, with two exceptions, has named the defendants only in their individual capacities. *See* R. Doc. 1 at pp. 2-6. Further, a claim for monetary damages asserted against a state official in an individual capacity, seeking to impose *personal* responsibility for actions taken under color of state law, is allowable in federal court because such a claim is not seen to be asserted against the State but is asserted against the individual alone. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Finally, although the plaintiff *has* asserted an official capacity claim for declaratory and injunctive relief against defendants James LeBlanc and Burl Cain, a claim for such relief asserted against a state official in an official capacity is not prohibited under the Eleventh Amendment, because such a claim is not treated as a claim against the State, *Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 *Am. Jur. 2d Civil Rights* § 101. Thus, there is no jurisdictional bar to the plaintiff's claim for equitable relief asserted against these two defendants in their official capacities, and this aspect of the defendants' motion should be rejected in connection therewith.

Turning to a substantive consideration of the plaintiff's claims, the defendants next contend in the instant motion that they are entitled to qualified immunity in connection with these claims. Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first

step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motion should be granted and that the plaintiff's motion should be denied. Specifically, the Court finds that the plaintiff has not met his burden in opposing the defendants' motion and has not come forward with evidence sufficient to rebut the defendants' sworn assertions in connection with these claims and to demonstrate the existence of any disputed issues of material fact.

---

1. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from a constant threat of harm or violence within the prison environment. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[p]rison officials are not ... expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). Thus, not every prison fight is actionable, and in order for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm. *Johnston v. Lucas, supra*, 786 F.2d at 1259. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Farmer v. Brennan, supra*, 511 U.S. at 837 (concluding that an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The plaintiff does not allege in this case that any defendant was personally aware of a specific risk of harm to the plaintiff that was posed by the offending co-inmate, that the two inmates had had any prior known conflict, or that the plaintiff had previously complained, prior to the incident, of any potential problem between himself and the co-inmate. Thus, instead of arguing that he was subjected to a particular threat of harm from a specific co-inmate, the plaintiff asserts that he was and is subjected to a generalized threat of harm at LSP which results

from the availability of tools and weapons used or made in the prison hobbyshops. As noted in *Farmer v. Brennan, supra*, 511 U.S. at 843, when addressing a risk of attack faced by an inmate within the prison environment, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." However, when evaluating a claim based upon a generalized threat of harm, it is often the widespread or pervasiveness nature of the threat that supports a finding of deliberate indifference. *See Farmer v. Brennan, supra*, 511 U.S. at 843 (noting that evidence that a risk of inmate attacks was "longstanding, pervasive, [or] well-documented" may support a conclusion that prison officials had actual knowledge of the risk).

The plaintiff has failed to show that he will be able to carry his burden of proof and show that prison officials have been deliberately indifferent to a substantial risk of serious harm to his safety or well-being. The defendants have presented evidence that the plaintiff obtained hobbyshop privileges in March, 2009, and voluntarily chose at that time to place himself within the confines of the hobbyshop where Exacto knives, bladed implements, and other tools that could be used as potential weapons (such as hammers, screwdrivers and chisels) were in use by other inmates. Before availing himself of hobbyshop privileges, the plaintiff (as with other inmates) was required to sign a form that explicitly acknowledged that "there will be times when no security officer will be present" and wherein he explicitly agreed to release prison officials from liability for any possible injuries. *See* R. Doc. 22-15. Although the plaintiff contests the defendants' use of this form as a basis for relieving them of responsibility – specifically because he argues that the defendants cannot abrogate their general responsibility to provide safety and security to inmates under their control – the plaintiff does not allege that he ever complained to

prison officials regarding any perceived unreasonable danger resulting from exposure to tools and knives in the hobbyshop or resulting from an asserted lack of adequate security during that period.[2] Nor does the plaintiff allege that he suffered any harm or explicit threat of harm while working in the hobbyshop during the period which preceded the incident complained of herein. Although the plaintiff complains of "numerous" prior incidents of violence at LSP during which hobbyshop tools or implements have been used as weapons, this claim alone, in the Court's view, is neither supported by the evidence nor sufficient to support a finding of liability. First, the number of prior events has not been shown to be large in comparison to the size of the prison. The Louisiana State Penitentiary is an institution that houses more than 5,000 inmates, and although it has been difficult, through discovery, to ascertain the exact number or frequency of prior incidents involving the use of hobbyshop tools or implements at LSP, only three such incidents have in fact been identified during the three-year period preceding the plaintiff's attack (in addition to one additional incident apparently occurring in 1998), and only one of these incidents occurred in the hobbyshop to which the plaintiff was assigned. Second, as noted in the dismissal of a similar case involving a claim by an inmate regarding a generalized risk of harm resulting from the alleged prevalence of manufactured hobbyshop weapons:

> [I]t should be noted that the danger does not come from the hobby shop, the materials, or the weapons themselves. It comes from the use of those weapons, which may increase the risk of violence, but their existence is only one fact to be considered in the overall question of whether or not prison officials have acted in a willful and wanton manner in inflicting unnecessary pain.... "[T]he stark reality of prison life is that virtually anything

---

2. The plaintiff argues that the referenced form is not applicable to him because, whereas he signed in 2009, he was transferred to a different dormitory in June, 2010, and so was not assigned to the Falcon dormitory at the time of the incident and was not the owner of the hobbyshop box referred to in the form. Notwithstanding, the plaintiff concedes in his Statement of Undisputed Facts that on the referenced date, he was "assigned as the helper of Falcon Hobbyshop Box # 60," *see* R. Doc. 92-1 at p. 4, and so presumably had hobbyshop privileges in the Falcon hobbyshop area.

can be employed as a weapon, *e.g.*, a pencil can become a dagger; an electric cord a garrote, a lock inside a sock a bludgeon; human excretion a poison. Pool cues, brooms, and chairs have all been used as weapons at one time or another. The pervasive risk of harm from which inmates are entitled to be protected is not the knife, but the act of assault. The courts have been unwilling to establish constitutional liability solely on the basis of the existence of weapons within an institution." *Bogard v. Cook*, 586 F.2d 399, 418 (5th Cir. 1979).

*Clay v. Wilkinson*, 2007 WL 5147091, *4 (W.D. La. Dec. 10, 2007). *See also El-Mumit v. Foster*, 232 F.3d 207, *1 (5th Cir. 2000) (upholding the dismissal of an inmate's claim regarding a stabbing on death row at LSP, notwithstanding allegations "that there had been numerous attacks and one other stabbing in the death-row housing unit in the six-month period preceding the attack"); *Harrison v. Culliver*, 2011 WL 4402137, *8-10 (S.D. Ala. Aug. 26, 2011), *affirmed*, 746 F.3d 1288 (11th Cir. 2014) (dismissing a prisoner's claim wherein he complained of injury resulting from the prevalence of hobbyshop weapons and of a lack of security in the area where the attack occurred); *Francisco v. Hebert*, 2007 WL 1805772, 10 (W.D. La. June 21, 2007) (dismissing a prisoner's claim of injury wherein he complained that prison officials allowed inmates to purchase and possess padlocks that, when placed in a sock, were used as weapons).

Based on the foregoing, the Court finds that the plaintiff has failed to present evidence sufficient to overcome the defendants' assertion of qualified immunity. "Prisons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality ... among prisoners" may occur. *Farmer v. Brennan, supra*, 511 U.S. at 858-59 (Thomas, J., concurring). The defendants have presented evidence reflecting that security officers patrol the hobbyshop area at intervals of approximately 30 minutes to an hour, *see, e.g.,* R. Doc. 22-3 at pp. 3 and 11-12, and R. Doc. 22-4 at p. 3, and that prison policy calls for all inmate tools to be inventoried on a monthly basis, *see* R. Doc. 22-14 at p. 3, and for random inventory checks to be conducted on a

weekly basis, *see id.* This is in addition to the occurrence of routine and randomized searches in other areas of the prison. The plaintiff also indirectly acknowledges that, when an incidence of wrongdoing occurs in one of the prison hobbyshops, security officers may close the offending hobbyshop for a lengthy period, thereby depriving all inmates in the area of access to this privilege. *See* R. Docs. 1 at p. 8 and 91-1 at p. 17 (where the plaintiff acknowledges that one of the reasons he did not report the incident was in response to threats of recrimination and/or further injury at the hands of co-inmates if the hobbyshop were closed because of his report). This threat of closure provides a significant incentive to inmates who have access to the hobbyshop areas to comply with prison rules. Finally, whereas the plaintiff may seek to equate the occurrence of his injury with a generalized threat of harm resulting from the alleged prevalence of hobbyshop tools or hobbyshop-manufactured weapons within the institution as a whole, the Court is unable to accept the plaintiff's contention in this regard. To the contrary, the plaintiff's injury happened *within* the enclosed confines of the hobbyshop area, where inmates were admittedly allowed to possess potentially dangerous knives and tools and where prison officials permitted such possession for the purpose of vocation and rehabilitation. Thus, the incident complained of by the plaintiff that occurred *within* the enclosed hobbyshop area is not analogous to any incidents that may have occurred in other areas of the prison, where tools and knives are treated as contraband and are not allowed.

Accordingly, based on the foregoing, in the absence of any suggestion that the defendants, by their actions, intended to cause the plaintiff harm, disregarded an obvious threat to the plaintiff's safety of which they were subjectively aware, or failed to take reasonable action in response to the perceived threat, there is no basis for the imposition of liability against the defendants for failing to protect the plaintiff from harm.

The plaintiff also complains that he should not have been charged with Aggravated Fighting in connection with the incident of December 2, 2012, and that he was denied procedural and substantive due process in connection with his subsequent disciplinary board proceedings, which proceedings were presided over by defendant Perry Dixon (because the plaintiff was not provided with a advance notice of the disciplinary report and hearing and because no investigation was conducted into the incident). These claims likewise fail to amount to constitutional violations.

First, the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment, without more, does not amount to a constitutional violation. *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984). Moreover, the United States Supreme Court has held that the procedures attendant to prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment subjects an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Inasmuch as the *Sandin* Court concluded that a disciplinary sentence of placement in segregated confinement was not so atypical as to give rise to a claim of the violation of procedural due process, this Court similarly concludes that the plaintiff's disciplinary punishment in this case, a transfer to a maximum security working cellblock, did not result in an atypical and significant deprivation which supports a due process claim. *See Dickerson v. Cain*, 241 Fed. Appx. 193 (5th Cir. 2007) (finding that placement in segregated confinement at LSP does not present "an atypical or significant hardship"). Thus, the plaintiff may not be heard to complain regarding any asserted procedural deficiencies which occurred during his disciplinary proceedings.

The plaintiff also complains that he was denied substantive due process in connection with the referenced disciplinary board proceedings. Specifically, the plaintiff complains that there was insufficient evidence to support a finding of guilt in connection with the charged offense.

From a substantive due process standpoint, in order for a prison disciplinary decision to pass constitutional muster, there must only be "some facts" or a "modicum of evidence" to support the finding that the inmate committed the offense in question. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985). Thus, "[p]rison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of the prison officials." *Washington v. Parker*, 53 F.3d 1282, *3 (5th Cir. 1995) (internal quotation marks omitted). The "some evidence" standard is extremely deferential, *Morgan v. Dretke*, 433 F.3d 455, 458 (5th Cir. 2005), and "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." *Washington v. Parker, supra, quoting Superintendent, Mass. Corr. Inst. Walpole v. Hill*, *supra,* 472 U.S. at 455. The relevant question is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* The "some evidence" standard may be met with a written report authored by a security officer with knowledge of the events described therein. *See Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). Indeed, even where there is no direct evidence and the existing evidence is "meager," the board's decision must be upheld so long as there is "some evidence" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. Walpole v. Hill*, *supra,* 472 U.S. at 457.

In the instant case, it appears that there was in fact "some evidence" to support the

finding of guilt in connection with the referenced disciplinary charge and punishment. The plaintiff does not dispute that he was in fact involved in a fight with the offending co-inmate on the referenced date, during which a weapon was used, that he did not report the incident to prison security officers, that he undertook to clean his wounds and thereby conceal evidence of same, and that he cooperated in the disposal of evidence relative to the offense.[3] Although he apparently believes that it was unfair to punish him when he was not the aggressor in the fight and was allegedly solely the victim, and whereas he contends that he was "forced" to cooperate in concealing evidence of the fight, there was certainly "some evidence" to support a finding that he was involved in an aggravated fight. Specifically, according to the report of an investigating official, Lt. Kristen Strahan, which report is based on information provided by the plaintiff and is sufficient to support the "some evidence" standard, *Hudson v. Johnson*, *supra*, 242 F.3d at 537, the plaintiff admitted in an interview that he had been involved in a prior verbal confrontation with the offending co-inmate on the night of the incident, which confrontation thereafter became physical, that he concealed evidence by "burn[ing] his bloody clothes," and that "he did not tell security about the fight because he wanted to handle it himself." *See* R. Doc. 98-7 at p. 28. This information is consistent with the written statement of another officer, defendant Cody Butler, who asserts that he learned, during his investigation, that the reason the plaintiff "did not report the incident [was] because he was going to retaliate ..., not because he was threatened or feared

---

3. Whereas the plaintiff complains that alleged exculpatory evidence was not disclosed or made available to him during his disciplinary proceedings in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Court finds that, because "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," *see Wolff v. Mcdonald*, 418 U.S. 539, 556 (1974), the plaintiff was not entitled to such disclosure. *See Normand v. Dretke*, 2008 WL 657246, *3 (E.D. Tex. March 6, 2008) (finding that "*Brady* is not applicable in the disciplinary context, as disciplinary hearings are not criminal in nature").

for his life," and that the plaintiff "asked" for assistance in covering up evidence of the fight. *See id.* at p. 15. Finally, inasmuch as prison officials were admittedly concerned that the plaintiff might undertake to retaliate against the offending co-inmate(s) if he were not moved to a more secure environment, it was not unreasonable for prison officials to sentence him to a working cellblock. Accordingly, the Court finds that the plaintiff has failed to show that there was any violation of his substantive due process rights in connection with the referenced disciplinary charge and punishment, and his claim in this regard should be rejected.[4]

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over claims arising under state law, a district court may decline to exercise supplemental jurisdiction if the state law claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having concluded that the plaintiff's federal claims should be dismissed, the Court recommends that supplemental jurisdiction over the plaintiff's state law claims be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims, that the plaintiff's Motion for Summary Judgment (R. Doc. 91) be denied, and that the defendants' Motion for Summary Judgment (R. Doc. 22) be granted,

---

4. Although the plaintiff makes several oblique references to having been labeled a "snitch" by reason of the referenced disciplinary charge and punishment, the Court finds no legal or factual basis for this claim. It is undisputed that the defendants learned of the referenced fight of December 2, 2011, through information provided by a confidential informant, not the plaintiff, that they thereafter went to the plaintiff's assigned work location and observed the several wounds on the plaintiff's body, and that this led to further investigation and to interviews with other inmates who ultimately acknowledged that the fight had occurred.

dismissing the plaintiff's claims, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on September 11, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**